IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Sep 05, 2024

| | |
|---|---|
| IN RE:<br><br>**JIMMY JOE SCISM,**<br><br>Debtor. | Case No. 23-10529-M<br>Chapter 7 |
| **ILENE J. LASHINSKY, UNITED STATES TRUSTEE**<br><br>**Plaintiff,**<br><br>v.<br><br>**JIMMY JOE SCISM,**<br><br>**Defendant.** | Adv. Proc. No. 23-01012-M |

## MEMORANDUM OPINION

*"We all make choices, but in the end our choices make us."*[1]

Generalizations are dangerous, but this one is likely true: no one who owes money likes collection actions. This adversary proceeding concerns Jimmy Joe Scism ("Defendant" or "Mr. Scism"), a debtor, who, when creditors came knocking, chose to place his assets in the hands of his wife, with the intent to keep those assets for his own. The choice allowed our debtor to continue his life (relatively) free from the consequences of his debts. When his creditors resumed the chase, Defendant sought chapter 7 bankruptcy relief. Ilene J. Lashinsky, the United States Trustee for this region ("Plaintiff" or the "UST"), now asks this Court to deny Defendant a discharge under 11

---

[1] Ken Levine, https://quotefancy.com/quote/34765/Ken-Levine-We-all-make-choices-but-in-the-end-our-choices-make-us (last visited Aug. 29, 2024).

U.S.C. § 727(a)(2), (3), (4), and (5).[2] Whatever his intentions, the result of Defendant's choices is the denial of his discharge.

## Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a). The granting or denial of a discharge is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(J).

## Burden of Proof

In order to prevail, the UST must prove each statutory element by a preponderance of the evidence.[3] Once the plaintiff establishes a *prima facie* case for denying a discharge under § 727, the burden of going forward shifts to the defendant.[4] The ultimate burden, however, remains with the plaintiff.[5] In order to further the policy of providing a debtor with a "fresh start," "the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor."[6] Even so, "a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor."[7]

---

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

[3] *See* Fed. R. Bankr. P. 4005. *See also First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir. 1991); *cf. Grogan v. Garner*, 498 U.S. 279 (1991).

[4] *See Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 619 (11th Cir. 1984); *Everspring Enters., Inc. v. Wang (In re Wang),* 247 B.R. 211, 214 (Bankr. E.D. Tex. 2000).

[5] *See First Union Nat'l Bank v. Golob (In re Golob),* 252 B.R. 69, 75 (Bankr. E.D. Va. 2000) (citing *Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 249 (4th Cir. 1994)).

[6] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997).

[7] *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996).

## Findings of Fact

*Admitted Facts*

Certain facts were stipulated by the parties in the Pretrial Order.[8] Of the 55 separately numbered stipulations of fact, the Court includes only those necessary to its decision. The stipulated facts have been renumbered and edited by the Court where necessary to provide clarity. All relevance objections by Defendant regarding these stipulated facts were overruled at trial.

1. On May 16, 2023 (the "Petition Date"), Defendant filed a voluntary chapter 7 petition, schedules, statement of financial affairs ("SOFA"), and other miscellaneous statements. Defendant signed his declarations under penalty of perjury in the petition, Declaration Concerning Debtor's Schedules, and the SOFA.

2. The UST appointed Scott P. Kirtley ("Trustee") as the chapter 7 Trustee of Defendant's bankruptcy estate and he continues to serve as Trustee.

3. The First Meeting of Creditors ("MOC") was held on June 7, 2023, and Defendant testified under oath he signed the petition, original schedules, and SOFA, he had reviewed them, and they were true and correct.

4. On July 2, 2023, Defendant filed his Amended Schedules ("Amended Schedules").

5. Pavement Repair Service, Inc. ("PRSI") is an entity Defendant created as a pavement repair and maintenance company.

6. PRSI was formed by Defendant in 2004.

7. Defendant was the sole shareholder of PRSI.

8. PRSI ceased operations in approximately June 2019.

9. In June 2019, Defendant and his wife, Nina Scism ("Mrs. Scism"), had two joint bank accounts at American Heritage Bank (collectively, the "Joint Accounts").

10. The first account was a checking account (the "Joint Checking Account").

11. The second account was a savings account (the "Joint Savings Account").

---

[8] *See* Pretrial Order, ECF No. 8.

12. On September 19, 2019, Kirby-Smith Machinery, Inc. ("Kirby-Smith"), obtained default judgment against PRSI and Defendant in case number CJ-2019-4516 in the District Court in and for Oklahoma County, Oklahoma ("Kirby-Smith Litigation"), in the amount of $15,903.25 plus interest, costs of $330.90, and attorneys' fees of $3,500.

13. On October 29, 2019, Kirby-Smith issued a garnishment to American Heritage Bank attempting to garnish funds of both PRSI and Defendant relating to the Kirby-Smith Litigation.

14. On November 8, 2019, American Heritage Bank filed a Garnishee's Answer indicating American Heritage Bank held $8,904.87 of unprotected funds and turned those funds over to Kirby-Smith.

15. $8,544.15 was withdrawn from the Joint Savings Account on October 31, 2019, on account of the garnishment in the Kirby-Smith Litigation.

16. $360.72 was withdrawn from the Joint Checking Account on October 31, 2019, on account of the garnishment in the Kirby-Smith Litigation.

17. On November 4, 2019, Defendant removed his name from the Joint Accounts he owned with Mrs. Scism at American Heritage Bank.

18. On November 26, 2019, Kirby-Smith issued a second garnishment to American Heritage Bank attempting to garnish funds of both PRSI and Defendant relating to the Kirby-Smith Litigation.

19. On November 26, 2019, Kirby-Smith filed an Application to Require Judgment Debtor to Appear and Answer as to Assets, and to Forbid the Transfer or Other Disposition of Property seeking to compel Defendant to appear and answer as to his assets.

20. On December 5, 2019, American Heritage Bank filed its Answer to the second Kirby-Smith garnishment indicating the Defendant had no account at the bank.

21. On March 30, 2022, Kirby-Smith filed another Application to Require Judgment Debtor to Appear and Answer as to the Assets and to Forbid the Transfer or Other Disposition of Property seeking to compel Defendant to appear and answer as to his assets.

22. On March 30, 2022, an Order to Appear and Answer as to Assets, and Forbidding the Transfer or Other Disposition of Property was entered in the Kirby-Smith Litigation. The order required Defendant to appear on April 21, 2022, and to bring certain documents with him.

23. On May 2, 2022, a Citation for Contempt as to Defendant was entered for his failure to appear on April 21, 2022. In the Citation, the court ordered Defendant to appear on May 26, 2022.

24. On October 22, 2020, National Funding, Inc. obtained a judgment against PRSI and Defendant in the amount of $26,713.41 in California.

25. On June 4, 2021, National Funding, Inc. domesticated its California judgment in Oklahoma in case number CV-2021-87 in the District Court in and for Creek County, Oklahoma.

26. On April 25, 2022, Jefferson Capital Systems, LLC obtained a judgment against Defendant in the amount of $5,304.85 in case number CS-2021-570 in the District Court in and for Creek County, Oklahoma.

27. On June 10, 2022, Jefferson Capital Systems, LLC issued a garnishment summons to American Heritage Bank.

28. On August 22, 2022, American Heritage Bank filed its answer to Jefferson Capital Systems, LLC's garnishment indicating the Defendant had no account at the bank.

29. On July 18, 2022, Dunham's Asphalt Services, Inc. obtained a judgment against PRSI and Defendant in the amount of $20,500 plus interest in case number CJ-21-114 in the District Court in and for Creek County, Oklahoma.

30. On October 3, 2022, Dunham's Asphalt Services, Inc. obtained a second judgment against PRSI and Defendant for its attorney fees in the amount of $6,465.00 and costs of $932.94.

31. On February 24, 2023, Dunham's Asphalt Services, Inc. served a continuing wage garnishment on Defendant's employer.

32. On February 27, 2023, Swiss RE Corporate Solutions America Insurance Company f/k/a North American Specialty Insurance obtained a default judgment against PRSI, Defendant, and Mrs. Scism in the amount of $75,796.54 plus interest and costs of $692.14 in case number CJ-2022-00060 in the District Court in and for Creek County, Oklahoma.

33. After Defendant removed his name from the Joint Accounts, he gave his paychecks to Mrs. Scism for her to deposit into the Joint Checking Account.

34. When Mrs. Scism deposited his paycheck into the Joint Checking Account, she routinely withdrew cash from the deposit.

35. Defendant and Mrs. Scism utilized the Joint Checking Account to pay their personal and living expenses after Defendant removed his name from the Joint Accounts through and after Defendant filed this bankruptcy case.

36. Defendant utilized the Joint Checking Account to make the payment on a 2016 Nitro Z20 bass boat ("Boat").

37. On May 30, 2023, Defendant added his name onto the Joint Accounts.

38. The Defendant did not disclose ownership of or interest in any bank accounts in his petition, original schedules, SOFA, or Amended Schedules.

39. The Defendant did not disclose any transfers of property in his original schedules, SOFA, or Amended Schedules.

40. The Defendant did not disclose any gifts in his original schedules, SOFA, or Amended Schedules.

***Additional Facts Adduced at Trial***

The amounts on deposit and subsequently garnished from the Joint Accounts by Kirby-Smith in 2019 consisted of both Defendant's and Mrs. Scism's personal earnings. At the July 1, 2024, trial (the "Trial"), Defendant testified that he believed it was unfair for his wife to be "punished" by the garnishments when she was not obligated on the Kirby-Smith judgment. During his MOC and Rule 2004 Examination, Defendant also stated that his intent in removing his name from the Joint Accounts in 2019 was to prevent future garnishments.[9] At Trial, Defendant testified, apparently for the first time in this litigation, that he was advised to remove his name from the Joint Accounts by an attorney he had engaged to file a bankruptcy case on his behalf. He stated that he acted on this advice, but the attorney never followed through in filing a bankruptcy case, and he was forced to seek out alternative representation.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," they are incorporated herein by this reference.

---

[9] *See* UST's Ex. 3 at 9-10 & Ex. 4 at 6.

## Conclusions of Law

The UST brings this action for the denial of Defendant's discharge pursuant to § 727(a)(2), (3), (4) and (5). In the complaint, the UST alleges Defendant transferred, removed and/or concealed his assets (i.e., his paychecks and his interest in the Joint Accounts) with the intent to hinder, delay, or defraud creditors; failed to keep financial records from which Defendant's financial condition or business transactions might be ascertained; knowingly and fraudulently made false oaths concerning his interest in the Joint Accounts and the value of the Boat and related equipment; and failed to explain satisfactorily the loss of more than $50,000 worth of cash withheld from Defendant's deposited paychecks over the two-year period prior to the filing of this bankruptcy case.[10] The Court will start with the allegation pursuant to § 727(a)(2)(A) concerning the Joint Accounts.

### *Section 727(a)(2)(A)*

Section 727(a)(2)(A) of the Code provides that a discharge may be denied where

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.][11]

A party objecting under this section must show by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed, or mutilated; (2) property of the debtor; (3) within one year prior to the bankruptcy filing; (4) with the intent to hinder, delay, or defraud a

---

[10] *See* UST's Ex. 42.
[11] § 727(a)(2)(A).

creditor.[12] "Transfer" is defined broadly, encompassing "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property."[13] "Essentially, a 'transfer' is any disposition of an interest in property which includes a transfer of possession, custody, or control even if there is no transfer of title and which also includes deposits to, withdrawals from, and transfers between bank accounts or similar accounts."[14]

"A single wrongful act or omission may be sufficient to prove actual intent, however, evidence of a pattern of wrongful behavior presents a stronger case."[15] As the United States Court of Appeals for the Ninth Circuit has stated:

> A debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2). Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor. Furthermore, "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy."[16]

"When a debtor admits that he acted with the intent penalized by section 727(a)(2)(A), there is no need for the court to rely on circumstantial evidence or inferences in determining whether the debtor had the requisite intent."[17] The party objecting to discharge must show both the act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder,

---

[12] *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (citing *In re Brown*, 108 F.3d at 1290, 1292 (10th Cir. 1997)) (internal citations omitted).

[13] § 101(54)(D).

[14] *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 918 (Bankr. D. Utah 2006) (citations omitted).

[15] *E. Diversified Distrib., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672 (Bankr. N.D. Ga. 2004).

[16] *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1200 (9th Cir. 2010) (citing *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1281-82 (9th Cir. 1996)).

[17] *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986).

delay, or defraud a creditor) were present during the one year before bankruptcy. "[A]nything occurring before that one year period is forgiven."[18]

The crux of the UST's claim under § 727(a)(2)(A) is that Defendant transferred and/or concealed his assets (i.e., his interest in the Joint Accounts and the funds he directed to be deposited therein) by removing his name from the Joint Accounts *and then* continuing to utilize and benefit from those accounts, with the assistance of Mrs. Scism, up until the Petition Date. The UST further claims Defendant did so with the intent to hinder, delay, and/or defraud his creditors.

Each paycheck received by Defendant within the year prior to the Petition Date was turned over to Mrs. Scism to deposit into the Joint Checking Account, from which his name had been removed. Each occurrence was a transfer of Defendant's property to Mrs. Scism, with the explicit intent and understanding that it would be deposited into the Joint Checking Account, to which he retained access and control, but which was sheltered from his creditors. Defendant testified that Mrs. Scism readily gave him cash from the Joint Checking Account for his weekly expenses such as gas, food, and cigarettes, and used the remainder of his paycheck to pay joint living expenses of the household, including making payments on the Boat. Thus, the first three elements of § 727(a)(2)(A) are satisfied.

The only issue left for the Court is whether Defendant possessed the requisite intent to hinder, delay, or defraud his creditors when he transferred each of his paychecks to Mrs. Scism in the year before the Petition Date. The UST relies on Defendant's own admissions as to why he initially removed his name from the Joint Accounts. On at least three separate occasions: the MOC, his Rule 2004 Examination, and the Trial, Defendant admitted he removed his name from the Joint Accounts to prevent future garnishments by his creditors. At all relevant times following the

---

[18] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993).

removal of his name from those accounts, Defendant understood depositing paychecks in the Joint Checking Account, held in the name of Mrs. Scism, would effectively shield the funds from his creditors. The Court need not question further when Defendant has laid bare his intent.[19] The UST has met the burden of proof under § 727(a)(2)(A) and Defendant's discharge will be denied pursuant to that section. As a result, the Court will not consider the UST's claims under the remaining subsections of § 727(a).[20]

## Conclusion

The UST has met her burden by a preponderance of the evidence. Defendant has not presented sufficient evidence to overcome the evidence of his intent under § 727(a)(2)(A). The discharge of Defendant will be denied under § 727(a)(2)(A).

Defendant shall not be granted a discharge in Case No. 23-10529-M. A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 5th day of September, 2024.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

7951.10

---

[19] The UST raises a theory of continuing concealment. Under the facts and evidence present in this case, the Court finds it unnecessary to consider this argument.
[20] *See Woolman v. Wallace (In re Wallace)*, 289 B.R. 428, 436 (Bankr. N.D. Okla. 2003).